UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MATHEN GEORGE,

                       Plaintiff,                    **MEMORANDUM & ORDER**

                     -against-                      04 CV 3263 (RJD) (MDG)

THE NEW YORK CITY TRANSIT
AUTHORITY, THOMAS CHARLES,
and CARL BARTELLI,

                     Defendants.
-------------------------------------------------------X
DEARIE, Chief Judge.

      Plaintiff Mathen George, an Indian national and bus operator for the New York City Transit Authority ("NYCTA"), alleges that his employer and two of his co-workers, Thomas Charles and Carl Bartelli, subjected him to a hostile work environment on the basis of his race and national origin and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 296. By letter dated August 26, 2005, plaintiff withdrew his claims against Thomas Charles. Defendants NYCTA and Bartelli now move for summary judgment. Defendants' motions are denied with respect to plaintiff's hostile work environment claims but granted with respect to his claims of retaliation.

      In order to prevail on a Title VII hostile work environment claim, a plaintiff must show: "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

Contrary to the NYCTA's assertions, plaintiff did not merely suffer a few isolated incidents of name-calling. Rather, plaintiff has produced evidence that he was the victim of a persistent barrage of ethnically offensive comments that spiked following the 9/11 attacks on the World Trade Center as well as one serious physical assault. Plaintiff testified at his deposition that he was routinely addressed as "Bin Laden," "Saddam Hussein," "camel jockey," and "caveman." See, e.g., George Dep. at 24-25, 28, 30, 39, 45, 250-54. He testified that "almost the entire depot" called him Bin Laden, id. at 22; that his co-worker Pablo Vega referred to him this way an "umpteen number of times," id. at 28; and that Carl Bartelli, his union representative, called him camel jockey "so many times" it was "not worth counting," id. at 253. Plaintiff has also produced sufficient evidence to allow a reasonable jury to infer that the 2001 assault by Vega, an active participant in the name-calling, was on account of plaintiff's ethnicity. Although no slurs were exchanged during the assault, facially neutral incidents may be used to support a claim of discrimination where, as here, "the same individual is accused of multiple acts of harassment. . . ." Alfano, 294 F.3d at 375. See also Raniola v. Bratton, 243 F.3d 610, 622 (2d Cir. 2001) ("We have held that prior derogatory comments by a co-worker may permit an inference that further abusive treatment by the same person was motivated by the same sex-bias manifested in the earlier comments."). In light of the above, a reasonable jury could thus find that plaintiff's working conditions were altered for the worse by the near-constant stream of biased rhetoric punctuated by a physical assault.

Plaintiff also has shown that material issues of fact exist regarding whether the above conduct may be imputed to his employer. Where a plaintiff is the victim of harassment by a non-supervisory co-worker, he must show that the employer "failed to provide a reasonable avenue

2

for complaint or . . . knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." Fairbrother v. Morrison, 412 F.3d 39, 52 (2d Cir. 2005) (quoting Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000)).

Plaintiff has raised triable issues of fact regarding whether the NYCTA took adequate remedial action in his case. Plaintiff testified that he complained to supervisors about his mistreatment on multiple occasions. George Dep. at 37, 41-43, 163, 280-84. In particular, he testified that he reported the 2001 assault to Superintendent Paul Maresca, id. at 163; that he reported the name-calling to Maresca and "one more super," id. at 43, and that he reported the 1996 assault by Bartelli to Superintendent Charlie Dargis, id. at 180. Plaintiff alleges that, despite these complaints, the harassment continued unabated. Maresca, for his part, testified that he could not recall whether plaintiff had complained about the name-calling, Maresca Dep. at 33; and that plaintiff never told him about the assault by Vega, id. at 38. Thus contrary to the NYCTA's contention, there is an issue of fact as to whether the NYCTA responded in a reasonable manner to plaintiff's complaints. See Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 441 (2d Cir. 1999) ("If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." (quoting Gallagher v. Delaney, 139 F.3d 338, 348 (2d Cir. 1997))).

Plaintiff also alleges that he was given mixed signals about the proper channels for filing a discrimination complaint. He testified that on two occasions, when he reported discriminatory conduct, Maresca told him to take his complaints up with the union. George Dep. at 45, 163. Given that Bartelli was plaintiff's union representative and that plaintiff had already complained to supervisors about Bartelli's own offensive conduct, the Court concludes that plaintiff has also

raised triable issues of fact as to whether the NYCTA provided plaintiff with a reasonable avenue for complaints.

Plaintiff next claims that the NYCTA retaliated against him in violation of Title VII. To make out a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) his employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. Schiano v. Quality Payroll Sys., 445 F.3d 597, 608 (2d Cir. 2006). The parties dispute whether plaintiff suffered any adverse actions and whether a causal connection exists between these actions and his protected activities. Of the four adverse employment actions alleged by plaintiff,[1] only one—that plaintiff was subjected to increased observation that led to two suspensions—is supported by anything more than conclusory assertions. See Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2409 (2006) (holding that an action is materially adverse when it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination"). Plaintiff nevertheless fails to establish a prima facie case, because he has not shown a causal connection between his protected activities and the asserted adverse action. First, plaintiff has failed to show temporal proximity since the observed rides he complains of did not even begin until more than four months after he filed his federal lawsuit. Cf. Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that in cases holding that mere temporal proximity is evidence

---

[1] Plaintiff maintains that he was the victim of the following adverse employment actions: (1) customers were planted on his route to create complaints; (2) he was tested for drugs more often than other employees; (3) he was placed on the sick leave abuse list; and (4) he was subjected to increased observation that led to two suspensions without pay and during which he could not accrue time towards his pension. Pl.'s Mem. of Law at 6, 12.

4

of causation, the temporal proximity is "very close" and citing with approval cases dismissing retaliation claims as too attenuated where there were time intervals of three and four months). Casting further doubt on plaintiff's attempts to establish a causal connection is evidence of plaintiff's history of job infractions and customer complaints. Menaker Decl. Ex. E. Moreover, neutral arbitrators upheld each of the two suspensions—one involving a collision with a light pole,[2] among other infractions, and the other an incident where plaintiff closed the doors of his bus on a passenger's neck—that plaintiff claims resulted from excessive scrutiny by his superiors. See Collins v. New York City Transit Auth., 305 F.3d 113, 115 (2d Cir. 2002) ("Where an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the arbitration decision has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive."). Although plaintiff insists that the arbitration decisions must be disregarded because "no real investigation [was] done" of the accident involving the passenger's neck, Pl.'s Mem. Law at 14, the NYCTA has produced documents showing that it conducted a thorough investigation. Menaker Decl. Ex. W. Accordingly, the Court gives significant weight to the arbitration decisions upholding plaintiff's suspensions and finds that plaintiff has failed to establish a causal connection between those suspensions and his complaints of discrimination.

Even if plaintiff had made out a prima facie case of retaliation, the NYCTA has offered ample evidence of legitimate, non-discriminatory reasons for its close monitoring of plaintiff's

---

[2] With respect to the suspension involving the collision with the lightpole, the arbitrator upheld the suspension but reduced the penalty from 70 to 30 days. Menaker Decl. Ex. V.

5

activities and its decisions to suspend him without pay—namely, the history of customer complaints against him and the arbitration decisions upholding the suspensions. Since the NYCTA has offered a legitimate, non-discriminatory explanation for its actions, plaintiff would next have to show that this explanation was mere pretext, which he has failed to do.

Plaintiff also brings state law claims against the NYCTA and Bartelli personally. Because retaliation and hostile work environment claims brought under the NYSHRL are governed by the same standards as Title VII claims, plaintiff's state law retaliation claims fail for the above reasons. See Schiano, 445 F.3d at 609 ("Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII."). Plaintiff may, however, proceed on his state law hostile work environment claim against the NYCTA. Regarding plaintiff's state law hostile work environment claim against Bartelli, the Second Circuit has held that a co-worker who "'actually participates in the conduct giving rise to a discrimination claim' [may] be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)). Here plaintiff has presented sufficient evidence to create a triable issue of fact that Bartelli routinely referred to plaintiff with ethnic slurs and, in so doing, "actually participate[d]" in plaintiff's discriminatory treatment. Plaintiff may thus proceed against Bartelli.

For the reasons stated above, the Court grants defendants' summary judgment motions with respect to plaintiff's retaliation claims. However, plaintiff may proceed on his state and

federal hostile work environment claims against both the NYCTA and Bartelli.

SO ORDERED.

Dated: Brooklyn, New York
July 17, 2007

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge